## AFFIDAVIT

I, Nathaniel A. May, being duly sworn, hereby depose and state as follows:

1.        I am a Special Agent employed by the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF").  As such, I am a law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18 of the United States Code; that is, an officer empowered by law to conduct investigations of, and make arrests for, offenses enumerated in Section 2516 of Title 18.  I have been employed by ATF since August 2020.  Prior to my employment with ATF, I worked as a licensed professional fire protection engineer for West Coast Code Consultants, Inc. for two years. I graduated from the University of Maryland in December 2015 with my Bachelor of Science Degree and in May 2017 with my Master of Science Degree, both in Fire Protection Engineering. I have completed the Criminal Investigator Training Program (CITP) and the ATF Special Agent Basic Training program (SABT), both of which were conducted at the Federal Law Enforcement Training Center (FLETC) in Glynn County, Georgia.  I have received specialized training in firearms identification and the investigation of firearms-related offenses.  As result of my training and experience as an ATF Special Agent, I am familiar with federal firearm and ammunition laws. I have personally conducted and/or assisted in investigations of criminal acts involving, but not limited to, the unlawful possession of firearms by prohibited persons, including persons who are previously convicted felons; the possession of firearms in furtherance of illicit drug distribution; and the use of firearms in the commission of violent acts. I have received training, both formal and on-the-job, in the provisions of the federal firearms and drug laws administered under Titles 18, 21 and 26 of the United States Code.

2.        I am thoroughly familiar with the information contained in this affidavit.  I have not included in this affidavit each and every fact known to me concerning this investigation.

Rather, I have set forth only the facts that I believe are essential to support the issuance of the requested search warrant.

3.      I have participated in the investigation that is the subject of this affidavit, in conjunction with other agents of the ATF and members of the Drug Enforcement Administration (DEA), troopers with the Connecticut State Police (CSP), and officers with the Wethersfield Police Department (WPD).  As a result of this participation, as well as information provided by other law enforcement officers, I am fully familiar with the facts set forth herein.

4.      This affidavit is made in support of a search warrant for two buccal DNA swab samples from **Hector LUNA,** who is described as a Hispanic man who is approximately 5'6" tall, has a date of birth of XX/XX/1965[1] and USMS Reg. No. 84289-509.  **LUNA** is currently being held at the Wyatt Detention Facility in Central Falls, Rhode Island.

**<ins>PROBABLE CAUSE</ins>**

5.      In May and June of 2021, DEA Agents and Task Force Officers (TFOs) from the DEA Hartford Resident Office (HRO) established that **LUNA** was the operator of a black Honda Pilot bearing CT registration AU-96879 (hereinafter the "**Target Vehicle**").  The **Target Vehicle** is currently registered to a man (Mr. Melendez - date of birth xx/xx/1988[2] with an address in Hartford, CT.  However, investigators know **LUNA** to operate the **Target Vehicle**. Investigators have observed **LUNA** on multiple occasions, over several months of the investigation, operating the **Target Vehicle**.

6.      On September 8, 2021, DEA HRO members observed the **Target Vehicle** traveling south towards New York, NY.  Once the **Target Vehicle** arrived in New York, NY, DEA members

---

[1] Full birthdate is known to the affiant
[2] Full birthdate and address are known to the affiant

observed a male, referred to in this affidavit as "CD," enter the **Target Vehicle** with a weighted McDonald's bag and shortly after, leave the **Target Vehicle** empty handed.  CD was confronted by members of the DEA.  After having his *Miranda* rights read, CD indicated that he had provided approximately two kilograms of narcotics to the male operator of the **Target Vehicle.**  CD said that the operator of the **Target Vehicle** put the two kilograms in a concealed compartment in the **Target Vehicle**. Surveillance observed the **Target Vehicle** heading back to the Hartford, CT area. DEA HRO members positively identified **LUNA** as the operator of the **Target Vehicle**.

7.      On September 20, 2021, DEA HRO members again observed the **Target Vehicle** traveling towards New York, NY.  DEA members in New York, NY observed the **Target Vehicle** occupied by two individuals, **LUNA,** and his girlfriend. DEA members observed a male, referred to in this affidavit as "JP," enter the **Target Vehicle**, retrieve a bag, and exit the **Target Vehicle.** JP was later confronted by members of the DEA. During a consent-search of JP's office, investigators seized four bags containing approximately $149,000 in U.S. currency. A narcotics-detection canine positively alerted to the bags. During a post-arrest interview, JP said that **LUNA** provided JP with the bag that was found to contain approximately $44,000. A search of JP's cell phone showed that JP had multiple communications with two cell phones used by **LUNA** prior to JP meeting with **LUNA**.

8.      On October 22, 2021, DEA HRO members observed the **Target Vehicle** in the area of 113 Folly Brook Blvd, Wethersfield, CT.  A short while later, members of the DEA observed the **Target Vehicle** traveling on I-91 South.  DEA agents followed the **Target Vehicle** traveling south on I-91 and the Merritt Parkway.  During this time, DEA HRO investigators requested the assistance of the Connecticut State Police (CSP) and a Wethersfield Police Department (WPD) K9 unit.

9.      At approximately 1:35 PM, a CSP Trooper observed the **Target Vehicle** on Route 15 South, passing exit 46 in Fairfield, CT.  The **Target Vehicle** made several driving violations, some of which were hazardous to the operator of the **Target Vehicle** and to those around it.  At this point, a CSP Trooper conducted a motor vehicle stop on the exit 44 off ramp.

10.     The operator and sole occupant of the **Target Vehicle** was positively identified as **LUNA**.  Shortly after stopping the **Target Vehicle**, a WPD Officer, along with his police K9 ("Marly"), arrived at the traffic stop to assist. The WPD K9 conducted an open-air sniff of the **Target Vehicle**. The WPD Officer indicated that his K9 had alerted to the presence of drugs coming from the **Target Vehicle**. DEA HRO members arrived at the scene shortly after the positive alert from the K9.

11.     DEA members spoke with **LUNA** outside of the **Target Vehicle**.  **LUNA** was asked where he was traveling to, and he stated that he was traveling to Newark to visit relatives. **LUNA** was asked about his travels prior to the traffic stop and **LUNA** stated that he had come from his residence, located at 249 Campfield Avenue in Hartford.  **LUNA** was asked if he had stopped anywhere prior to the traffic stop and he stated that he only stopped at a gas station to get a red bull and gas.  Agents affirmed that **LUNA** did stop at the Cumberland Farms located at 151 Silas Deane Hwy in Wethersfield, CT.  However, at approximately 12:31 p.m., as mentioned above, the **Target Vehicle** had been observed stopping briefly at 113 Folly Brook Blvd in Wethersfield, CT.

12.     DEA members subsequently conducted a search of the vehicle.  Based on previous information and knowledge of this investigation, members of the DEA HRO knew that the **Target Vehicle** contained an aftermarket, concealed compartment, in the center console.  During the search, DEA HRO members located the concealed compartment in the center console area of the

**Target Vehicle**.  At this time, DEA members spoke to **LUNA** again.  DEA asked **LUNA** about the concealed compartment and **LUNA** indicated that he had no knowledge of any such compartment.  **LUNA** stated that he was not the owner of the vehicle and that he was only borrowing the car.  DEA indicated that investigators believed **LUNA** knew about the compartment and asked the sequence to open it.  **LUNA** again denied having any knowledge of the concealed compartment.  DEA members spoke to **LUNA** on several occasions during the traffic stop regarding the compartment, and its suspected contents, and at all times **LUNA** denied having any knowledge of the compartment, or what was inside the compartment.

13.    DEA members eventually gained entry into the concealed compartment by breaking a hole in the side of center console.  Inside the concealed compartment, DEA located three (3) large bundles and one smaller bundle of U.S. Currency wrapped in grey duct tape labeled "10 K", "10 K", "10 K" and "3500."   The U.S. Currency totaled approximately $33,500. Additionally, DEA found a black and silver Smith & Wesson, model SD9 VE, 9mm caliber handgun bearing serial number HFP3827, located in the concealed compartment.  The Smith & Wesson handgun contained a magazine with ten (10) rounds of 9mm ammunition, but there was not a round in the chamber.  CSP conducted a query of the firearm, revealing that it had been reported stolen out of Hartford, CT.  After finding the stolen handgun, **LUNA** was placed into handcuffs and moved to the front passenger seat of a CSP patrol car.  The concealed compartment also contained one .223 caliber round and a piece of a clear baggie with a small amount of white powder that field-tested positive for cocaine.  The small baggie was not seized due to the small amount of suspected cocaine residue, all of which was used for the field test; however, it was photographed on scene. The firearm was made safe and placed into plastic bags by CSP before being photographed.

14.     All of the above seized evidence was transported to the DEA HRO where it was subsequently processed and secured in accordance with DEA policy and procedure.  The Smith & Wesson, model SD9 VE, 9mm caliber pistol bearing serial number HFP3827, the magazine associated with the above-mentioned firearm, the ten rounds of assorted 9mm ammunition, and the one round of .223 caliber ammunition were taken into the custody of the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) Hartford Field Office (FO) on November 9, 2021.

15.     On November 10, 2021, ATF Agents, collected Touch DNA samples from the firearm and magazine.  Swabs were taken from the grip, slide, slide release, trigger, and trigger guard areas, as well as the magazine.

16.     On November 24, 2021, the Touch DNA samples taken from the Smith & Wesson, model SD9 VE, 9mm caliber pistol and the accompanying magazine were submitted to the Connecticut Division of Scientific Services, Forensic Laboratory (CT State Lab), located at 278 Colony Street, Meriden, CT for DNA analysis.

17.     On February 8, 2022, ATF received a verbal confirmation from a forensic analyst at the CT State Lab indicating that the Touch DNA samples sent to the CT State Lab did contain DNA profiles suitable for comparison, should a known sample be submitted.  The formal report outlining the DNA profiles obtained has not been provided by the CT State Lab at this time.

18.     Furthermore, an interstate nexus investigation, conducted by ATF on the seized Smith & Wesson, model SD9 VE, bearing serial number HFP3827 and the 9mm ammunition found with the firearm revealed that they both affected interstate commerce.

19.     A query of **LUNA** in the National Crime Information Center (NCIC) revealed that **LUNA** was a previously convicted felon, with three prior felony convictions in the State of Connecticut.  On March 27, 2008, **LUNA** was convicted in the State of Connecticut of Violation

of a Protective Order and he was sentenced to eighteen (18) months of imprisonment (execution suspended) and 18 months of probation.  On May 25, 2010, **LUNA** was convicted in the State of Connecticut of Possession of Narcotics and Violation of a Protective Order, and he received concurrent sentences for both offenses of five years of imprisonment (execution suspended) and three years of probation.

20.     ATF Agents are requesting a DNA search warrant for **LUNA**, so that a known sample of **LUNA's** DNA can be compared to the DNA profiles obtained from the Smith & Wesson SD9 VE firearm and/or the accompanying magazine.  This is important because **LUNA** indicated during his arrest that he had no knowledge of the existence of a concealed compartment within the **Target Vehicle**, nor of the contents of that compartment.  By comparing a known sample of **LUNA's** DNA to the profiles collected by the CT State Lab from the Smith & Wesson SD9 VE firearm and/or the magazine, investigators will be able to determine if **LUNA** in fact did possess the firearm and/or the magazine that was located in the center console.

<u>**SEARCH TO BE CONDUCTED**</u>

21.     The DNA samples of **Hector LUNA** sought herein will be collected by buccal swabbing.  This method involves taking a sterile swab (like a Q-Tip) and gently scrubbing the inside right cheek, then the inside left cheek, for approximately five to 10 seconds.  Two samples are requested in the event that one of the samples becomes contaminated or otherwise cannot be tested.  The samples seized will be submitted to the CT State Lab and will be subject to examination, testing and analysis, being compared to the DNA material obtained from the Smith & Wesson SD9 VE firearm and accompanying magazine seized from the hidden compartment of the **Target Vehicle** operated by **LUNA** or other items seized during this investigation that are deemed to have been in **LUNA's** possession.

22.     It is understood that DNA profiles or partial DNA profiles of more than one person may be located on an object when more than one person has handled an item.

23.     The execution of this search warrant will be executed while **LUNA** is under pre-trial detention related to his federal charges arising from his arrest on October 22, 2021.  In the event that **LUNA** is non-compliant, and due to the potential dangers to both the executing officers and the defendant associated with executing a validly issued search warrant on a non-compliant subject, it is requested that the Court authorize law enforcement officers including ATF, DEA, CSP, and Connecticut Department of Corrections personnel, to use reasonable measures necessary to restrain **LUNA** for the sole purpose of obtaining two buccal DNA swabs in the manner described above.

24.     Based upon the foregoing, there is probable cause to believe that DNA swabs of **LUNA** will constitute evidence of violations of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (possession of a firearm and ammunition by a convicted felon) and 18 U.S.C. § 922(j) (possession of a stolen firearm).

Nathaniel May
Special Agent
Bureau of Alcohol, Tobacco, and Firearms and Explosives

Attested to by the applicant in accordance with the requirements of Fed.
R. Crim. P.  4.1 by . _____
                        *(specify reliable electronic means)*

_____        _____
        *Date*                                    *Judge's signature*

_____        _____
        *City and State*                    Magistrate Judge Lincoln D. Almond